JOAQUÍN DÍAZ Y DÍAZ, demandante y apelante, *v.* FRANCISCO DELGADO NEGRONI, casado con RITA OPPENHEIMER y ANTONIO DELGADO NEGRONI, casado con RUTH E. CAPPLE, demandados y apelados.

No. 4115.—*Visto:* Febrero 16, 1928.  *Resuelto:* Julio 19, 1928.

*López de Tord & Zayas Pizarro,* abogados del apelante; *José Tous Soto,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El 8 de octubre de 1926, Joaquín Díaz entabló demanda de desahucio en la Corte de Distrito de Ponce contra Francisco y Antonio Delgado. Los demandados excepcionaron la demanda. Sus excepciones fueron declaradas con lugar, y la corte, sin dar oportunidad al demandante para enmendar su alegación, dictó sentencia desestimando en todas sus partes la demanda. Pidió el demandante a la corte que reconsiderara su sentencia y le permitiera enmendar su demanda expresando la forma en que lo haría y la corte negó su petición. Entonces el demandante apeló para ante este Tribunal Supremo, señalando en su alegato la comisión de veintiún errores.

La demanda contiene tres causas de acción. En la primera se alega como motivo para el desahucio el precario; en la segunda, la falta de pago, y en la tercera, el haber destinado las fincas arrendadas a usos no pactados.

Es tan claro que la tercera causa de acción no procede, que prescindiremos de referirnos a ella a fin de no complicar

demasiado esta opinión. Aunque no puede afirmarse con tal seguridad lo mismo de la segunda causa de acción, sobre todo si se examina la enmienda propuesta, no nos referiremos a ella extensamente, limitándonos a indicar algo al final, ya que según la opinión que del caso hemos formado, la sentencia apelada tendrá que revocarse porque la primera causa de acción aduce hechos suficientes sin duda alguna en cuanto a una de las fincas arrendadas.

No seguiremos al apelante en la discusión de sus errores en el orden y en el modo en que los ha señalado. Muchos de ellos se refieren a manifestaciones hechas por el juez de distrito en la opinión que emitiera para fundar su sentencia y carecen por tanto de importancia decisiva, y varios otros tratan la misma cuestión bajo diferentes aspectos. Entresacaremos lo fundamental, y a ello concretaremos nuestro estudio.

Los hechos en que se basa la primera causa de acción, son, en resumen, los que siguen:

Que el 21 de octubre de 1924, por escritura pública, Andrés Negroni y su esposa Dolores Rodríguez, dueños de cuatro fincas rústicas: A, de 91 cuerdas; B, de 40 cuerdas; C, de 35 cuerdas, y D, de 100 cuerdas, las dieron en arrendamiento a Francisco Negroni por término de diez años y canon de veinticinco dólares semanales pagaderos cada día lunes, habiéndose obligado el arrendatario a depositar dicho canon semanalmente en cualquier banco de Yauco a la disposición del entonces dueño Andrés Negroni; que el referido arrendamiento "no fué ni ha sido inscrito en cuanto a la finca descrita con la letra D"; que el matrimonio de los esposos Negroni-Rodríguez quedó disuelto por divorcio adjudicándose las fincas arrendadas de por mitad a ambos cónyuges; que el 26 de marzo de 1925, por escritura pública que se inscribió en el Registro, Andrés Negroni vendió la mitad de dichas fincas al demandante Díaz, de cuya venta tuvieron conocimiento en el mismo día el arrendatario Francisco Negroni y los demandados Francisco y Antonio Delgado; que

ni en el referido contrato de venta ni en ninguna otra forma el demandante Díaz asumió el arrendamiento ni se obligó a respetarlo; que el 7 de abril, 1925, por escritura pública, doña Dolores Rodríguez vendió a los demandados Antonio y Francisco Delgado la otra mitad de las fincas arrendadas sin que los Delgado asumieran el arrendamiento y se obligaran a respetarlo; que el 14 de abril, 1925, el demandante Díaz, demandó a los Delgado en solicitud de que se decretase a su favor el retracto de la mitad de las fincas que habían adquirido de doña Dolores, dictándose sentencia en febrero 20, 1926 favorable al demandante y en ejecución de la cual el márshal, el 25 de agosto de 1926, por escritura pública, le trasmitió el dominio de la otra mitad de las fincas arrendadas sin que el demandante asumiera y se obligara a respetar el arrendamiento; que en el citado día 7 de abril de 1925, pero posteriormente a la venta hecha por doña Dolores a los Delgado de que se ha hecho mérito, por escritura pública, el arrendatario Francisco Negroni sub-arrendó por todo el tiempo que le quedaba las dichas fincas A, B, C y D a los demandados Francisco y Antonio Delgado, haciéndose constar en la escritura que siendo dueños los Delgado de la mitad de las fincas por compra a doña Dolores Rodríguez el arrendamiento quedaba extinguido en cuanto a la dicha mitad por consolidación de derechos, quedando los sub-arrendatarios únicamente obligados al pago de $12.50 semanales al demandante Díaz, dueño de la otra mitad de las fincas por compra a Andrés Negroni, y que los demandados Delgado están detentando la posesión de las indicadas fincas especialmente la de un condominio proindiviso de una mitad sobre las fincas descritas con las letras A, B y C y la totalidad de la descrita con la letra D, sin pagar canon ni merced alguna y contra la voluntad del demandante, habiéndose negado a entregar la posesión al demandante.

Parece conveniente agregar que en el proyecto de enmiendas acompañado a la moción de reconsideración se propuso adicionar los hechos de la primera causa de acción con los

que siguen: "que la cancelación del arrendamiento sobre la mitad de dichas fincas, por confusión de derechos mencionada en la escritura de sub-arrendamiento, fué debidamente inscrita en el Registro de la Propiedad de San Germán, en cuanto a las fincas A, B y C en fecha 28 de abril de 1925, apareciendo tales condominios libres del referido arrendamiento."

Y además, que aparece del récord lo que sigue:

"En ocasión de estar el Lcdo. José Tous Soto argumentando la moción de reconsideración, hubo el siguiente incidente: Demandado: —¿Fué inscrito el contrato de arrendamiento?—Demandante:—Fué. inscrito, pero cancelado por confusión de derechos en cuanto a la mitad de las fincas 'A,' 'B,' y 'C,' habiéndose hecho constar dicha cancelación en el Registro de la Propiedad.—Demandado:—Esta admisión está ante la corte a los efectos de juzgar este caso.—Juez:—Que se consigne en récord dicha admisión."

Se indicaba de igual modo en el proyecto de enmiendas que se haría "constar en la súplica que el desahucio en precario se le atribuye a la totalidad de la finca letra D, y a un condominio representado por una mitad adquirido de doña Dolores Rodríguez sobre las demás fincas A, B y C y que el resto de los condominios sobre estas tres fincas se trata de desahuciar por la causa de falta de pago."

La resolución de este caso depende, pues, enteramente, de la interpretación que se dé al artículo 1474 del Código Civil que, copiado a la letra, dice:

"Artículo 1474. El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria.

"Si el comprador usare de este derecho, el arrendatario podrá exigir que se le deje recoger los frutos de la cosecha que corresponda al año agrícola corriente y que el vendedor le indemnice los daños y perjuicios que se le causen."

Por los hechos que dejamos extractados, se verá cuán cuidadoso ha sido el demandante en alegar que en forma alguna pactó en contra del derecho que la ley le reconoce

de dar por terminado el arriendo al comprar las fincas arrendadas. La actitud del demandante no ha sido franca en cuanto a si se inscribió o no el arrendamiento en el registro de la propiedad con respecto a las fincas A, B y C. Parece desprenderse de todo que se inscribió, sosteniendo el demandante la teoría de que fué cancelado por consolidación de derechos al adquirir los demandados la mitad de dichas fincas que luego pasó al demandante a virtud de la acción de retracto, pero como se alega de modo expreso que el arrendamiento no se inscribió con respecto a la finca D, surge de modo inevitable el problema. Con respecto a dicha finca D nos encontramos frente al caso de un contrato de arrendamiento no inscrito en el registro que el comprador no se obligó a respetar al adquirir la finca. Siendo ello así, su derecho al desahucio parece tan claro a virtud del precepto legal aplicable vigente en Puerto Rico, que apenas puede discutirse.

La cuestión no es nueva ante este tribunal. En el caso de *López* v. *Central Eureka*, 27 D.P.R. 291, 294, dijimos:

"Sostiene la parte demandada y apelante que el demandante no es un tercero porque tuvo conocimiento directo del arrendamiento, según consta de la misma escritura de venta, y, por tanto, que estaba obligado a respetar dicho contrato aunque no estuviera inscrito en el registro.

"No es posible aceptar tal teoría. La Ley Hipotecaria dispone que los contratos de arrendamiento de bienes inmuebles, (artículo 2, No. 5º), podrán inscribirse en el registro de la propiedad, y es a virtud de la inscripción que surge el derecho del arrendatario a que si el arrendador vende la finca, el comprador respete su contrato en los términos que consten del registro. Si el contrato de arrendamiento no se inscribe, entonces, de no existir pacto en contrario, queda en toda su fuerza el precepto del artículo 1474 relativo al derecho del comprador a que termine el arrendamiento vigente al verificarse la venta. Las palabras de la ley demuestran que el legislador tenía en mente el caso en que el comprador estaba enterado de la existencia del contrato.

"Comentando Manresa el artículo 1571 del Código Civil español, igual al 1474 del nuestro, dice:

" 'De acuerdo con este criterio, el artículo 1571 sienta el principio de que el comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta. El punto de partida de este criterio es la consideración de que siendo el arrendamiento un contrato que pasó entre el arrendador y el arrendatario, y mereciendo el comprador el carácter de tercero respecto del mismo, no puede prevalecer contra él un derecho de la categoría de los personales.

" 'El Código en este artículo ha instituido evidentemente una causa más de desahucio, causa que no arranca de hecho u omisión del arrendatario como las demás que hemos examinado, sino del acto de traslación de dominio realizado por el arrendador, que, al engendrar una nueva relación jurídica, ejerce positiva influencia sobre la antes existente por razón de los principios en que cada una se funda y del objeto común sobre que recaen, que es la finca arrendada.

" 'Antes de que la jurisprudencia de este artículo hubiese tenido tiempo de formarse, oímos discutir si el derecho que al comprador concede, podía o no ser ejercitado en forma de acción de desahucio y en el juicio de este nombre. Siempre estuvimos por la afirmativa, porque si lo que al comprador se concede es el derecho de hacer cesar un arrendamiento para que la finca quede completamente a su disposición, no otro es el fin que con el desahucio se persigue, y porque si este juicio procede en aquellos casos en que el motivo resulta de un hecho claro y evidente, notoriamente de esta naturaleza es el hecho de la venta de que arranca el derecho del comprador. No puede, pues, caber duda de que se trata de una nueva causa de desahucio, y que en este juicio ha de tener efectividad el derecho del comprador cuando el arrendatario no quiera reconocerlo voluntariamente. Al Tribunal Supremo han llegado ya no pocos casos, y ni una vez siquiera se ha dejado de dar por supuesto, que tal procedimiento sea el adecuado.

    *     *     *     * .     *     *     *

" 'Lo dispuesto en la Ley Hipotecaria.—En estas palabras establece el párrafo 1º del artículo 1571 otra excepción al principio de que el comprador tiene derecho a que termine el arrendamiento. Lo dispuesto en la Ley Hipotecaria es el contenido del número 5º del artículo 2º, o sea la determinación de los casos en que el arrendamiento es inscribible, y, por lo tanto, derecho real, casos que ya sabemos cuáles son; lo dispuesto en la Ley Hipotecaria es el principio del artículo 24 de la misma, que dice que los títulos inscritos surtirán su efecto aun contra los acreedores singularmente privilegiados por la legislación común.

" 'Consecuencia de estas disposiciones es que, cuando se trata de un arrendamiento inscrito en el registro de la propiedad, se trata de un derecho real que, por virtud de su inscripción, surte efectos contra tercero. El comprador, como tal tercero, tiene que estar y pasar por él, y, por lo tanto, no le asistirá el derecho a que el arrendamiento termine.' 10 Manresa, Código Civil Español, 637, 640.

"Y esta Corte Suprema en el caso de *Sosa* vs. *Río Grande Agrícola Co., Ltd.*, 17 D.P.R. 1149, interpretando y aplicando el repetido artículo 1474 del Código Civil Revisado, estableció la siguiente doctrina que no deja lugar a dudas de ningún género:

" 'Celebrado un contrato de arrendamiento en virtud de documento, sin pacto de respetar la posesión del arrendatario en caso de venta, dicho contrato tiene el carácter de personal y aún en el supuesto de que el comprador de la finca arrendada tuviera conocimiento de la existencia del mismo, esto no altera su naturaleza y el arrendatario está obligado a desalojar la finca si así lo exige el comprador.' "

Son varios los casos resueltos por esta Corte Suprema en igual sentido. Nos hemos referido al de *López* v. *Central Eureka* porque parece ser el único en el que estaba envuelto como lo está en éste un contrato de arrendamiento constante en escritura pública por un término mayor de seis años, conocido por el comprador al adquirir la finca arrendada.

Se ha sostenido vigorosamente en el seno del tribunal durante las largas discusiones a que ha dado origen la consideración de este recurso, que un arrendamiento por más de seis años aunque no esté inscrito en el registro constituye un derecho real y por tanto que el comprador de la finca si lo conoce al celebrar el contrato de compra está obligado a respetarlo, esto es, que las palabras "lo dispuesto en la Ley Hipotecaria usadas por el Legislador en el artículo 1474 se refieren no sólo a los arrendamientos ya inscritos como se resolvió en el repetido caso de *López* v. *Central Eureka* si que también a los incribibles aunque no lo estén.

Encuentra apoyo esa teoría en una decisión de la Corte Suprema de las Islas Filipinas. Nos referimos al caso de *T. de Winkleman* contra *Vélez*, 43 Jurisprudencia Filipina

632. Hablando por la corte el Juez Romuáldez se expresó así:

"El punto fundamental en este litigio estriba en si la demandante, bajo las circunstancias del caso, puede o no apoyarse en lo estatuído en el artículo 1571 del Código Civil, al efecto de poder, como compradora, dar fin a este arriendo vigente al tiempo de su compra de la finca.

"Veamos si, efectivamente, ampara a la demandante este precepto legal cuyo texto es como sigue:

" 'Art. 1571. El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente, al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria.'

"Como observa Manresa (10 Código Civil, pág. 637), en tanto concede la ley al comprador este derecho, en cuanto le considera tercero. De aquí que cuando no es tercero, por haber entrado en el pacto de respetar el arrendamiento, o porque no le concede tal concepto la Ley Hipotecaria, entonces no le asiste el derecho de dar fin al arrendamiento.

"Hay, pues, en el artículo transcrito una regla general que es a la que se acoge la demandante, pero que no tiene aplicación en dos casos, a saber: Cuando hay pacto en contrario, o cuando la Ley Hipotecaria no reconoce al comprador como tercero.

"En cuanto al primer caso de excepción, es sabido que el pacto en contrario a que se refiere el artículo es el habido entre el vendedor y el comprador de la finca, y no el otorgado entre el arrendador y el arrendatario. En el caso ante Nos, no hubo tal pacto expreso en la escritura de traspaso del predio; pero la estipulación inserta en el contrato de arrendamiento, de que éste se respetaría en caso de venta de las fincas, era conocida por la compradora quien, antes de comprar el terreno, había leído dicho contrato. Ella, por consiguiente, hizo la compra conociendo tal pacto el cual vino de este modo a formar parte del contrato de venta otorgado a su favor. Si tal pacto no se hizo constar expresamente en la escritura de venta, fué, sin embargo, conocido y consentido por la compradora. Como la ley no exige que este pacto conste precisamente por escrito, lo creemos suficiente cuando, como en el caso presente, aunque sobreentendido, no puede dudarse que existe y fué consentido por la compradora. Análogo criterio sustenta este Tribunal en el asunto de *Pang Lim y Gálvez* contra *Lo Seng* (42 Jur. Fil., 296).

"La segunda excepción prevista en el artículo del Código Civil

tiene lugar en los arrendamientos a que se refiere el número 5, del artículo 2, de la Ley Hipotecaria que dice:

" 'Art. 2. En los Registros expresados en el artículo anterior se inscribirán:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

" '5. Los contratos de arrendamiento de bienes inmuebles por un período que exceda de seis años, o los en que se hayan anticipado las rentas de tres o más años, o cuando, sin tener ninguna de estas condiciones, hubiere convenio expreso de las partes para que se inscriban.'

"En estos casos el arrendamiento es conceptuado como derecho real (véase la Exposición de Motivos de la Ley Hipotecaria, y 'Legislación Hipotecaria' por Galindo y Escosura, tomo 1, págs. 459–462) y, una vez inscrito, perjudica a tercero (art. 1549, Código Civil).

"Por manera que, cuando el arrendamiento de una finca, por hallarse en uno de los casos previstos en esta disposición últimamente citada, es inscribible y está inscrito, no le asiste al comprador de la misma el derecho de dar por terminado el arriendo.

"El cuestionado en la presente causa es por un período mayor de seis años. Es por consiguiente inscribible, y tiene por esto el concepto de un derecho real ante la ley. No está inscrito, es verdad, por no estarlo previamente el inmueble; pero la demandante, compradora del terreno así arrendado, lo adquirió con pleno conocimiento de la existencia, duración y demás condiciones del arrendamiento incluyendo el pacto de la subsistencia de éste, cuya escritura había leído. ¿Suple tal conocimiento la falta de inscripción del contrato de arrendamiento, para que éste pueda entenderse exceptuado del precepto general contenido en el artículo 1571 del Código Civil? La jurisprudencia contesta afirmativamente.

" 'Que siendo uno de los principales fundamentos y objetos de la Ley Hipotecaria el de la publicidad de las cargas o gravámenes que afectan a la propiedad inmueble para que nadie sea responsable de los que ignore, es indudable que con arreglo a dicha ley no puede considerarse como tercero al que, si bien no intervino en el acto o contrato inscrito, tuvo perfecto conocimiento al adquirir la finca por él poseída de las cargas impuestas sobre ella, doctrina que está de acuerdo con los principios de derecho, según los cuales no cabe impugnar aquello que se aceptó sin protesta o que expresa o tácitamente se consintió.' (Sentencia de 8 de oct. de 1885, 58 Juris. Civil, pág. 460.)

"Esta doctrina ha venido reiterándose en sentencias posteriores

del mismo Tribunal Supremo, como se puede ver en las dictadas en abril 5, 1898, en diciembre 6, 1901, en mayo 13, 1903 y en marzo 23, 1906.

" 'El objeto de la inscripción de un documento relativo a terrenos, censos, hipotecas, gravámenes o cualquiera otra clase de derechos reales, es el de notificar a terceras personas interesadas de la existencia de estos varios gravámenes sobre la finca. Si las partes interesadas tienen efectivamente conocimiento de la existencia de tales cargas o gravámenes, entonces la necesidad del registro cesa. Tampoco puede el que tenga conocimiento real de la existencia, de un gravamen, adquirir derecho alguno sobre la finca, libre de tal gravamen, por el mero hecho de que éste no se haya inscrito.

" 'Concluimos por tanto que la demandada, teniendo como tenía pleno conocimiento de la existencia de la hipoteca en cuestión sobre la finca de referencia, no puede ahora aprovecharse de la circunstancia de que la demandante no pidiera la translación de la misma al registro moderno con arreglo a la Ley Hipotecaria. *El efecto de esta declaración expresa en la escritura de traspaso era equivalente a la inscripción de dicha hipoteca con arreglo a la Ley Hipotecaria.'* (Obras Pías contra Devera Ignacio, 17 Jur. Fil., 46, 48.)

" 'El objeto de toda ley de registro es hacer saber a los que trafican con fincas los traspasos y gravámenes relativos a las mismas, y ampararles, de esta suerte, contra enajenaciones y cargas anteriores y secretas. El conocimiento cierto que un comprador tenga de una hipoteca o título equivale a la notificación que resulta del registro.' (Patterson vs. De la Ronde, 8 Wall., 292; 19 U. S. (L. ed.). 415; Findlay vs. Hinde, 7 U. S. (L. ed.), 128; Landis vs. Brant, 13 U. S. (L. ed.), 449; Fowler and Badgett vs. Merrill, 13 U. S. (L. ed.), 736; National Bank of Genesee vs. Whitney, 26 U. S. (L. ed.), 443; Moelle vs. Sherwood, 37 U. S. (L. ed.), 350.)

"De esta doctrina común a Filipinas, a España, país de nuestro abolengo jurídico en esta materia y a Norte América desde donde vienen incorporándose a nuestro derecho principios del anglosajón, es consecuencia y aplicación obvia el que el perfecto conocimiento, por parte de la demandante, del arrendamiento en cuestión y del pacto de que subsistiría éste en caso de venta de la finca, produce en este caso particular, y en cuanto a ella atañe, los mismos efectos que la inscripción de dicho arrendamiento en el registro de la propiedad.

"Siendo esto así, este arrendamiento, no puede menos de entrar

también en la última de las excepciones enumeradas en el citado artículo 1571 del Código Civil.

"Los derechos, pues, adquiridos por el demandado como arrendatario de la finca aludida, conocidos por la demandante antes de comprarla, no pueden sufrir menoscabo, pues son incólumes ante tal traspaso.

"Carece, por tanto, la demandante de derecho alguno a dar fin al arriendo en cuestión, y, subrogada ella en la situación legal de la arrendadora, creada por tal contrato por ella conocido, incúmbele respetarlo en todas sus partes."

Hemos transcrito todo lo pertinente de la opinión, para ser justos al exponer los puntos de vista en contrario. No puede dudarse de lo persuasivo que es el razonamiento de la Corte Suprema de las Islas Filipinas, pero después de estudiar de nuevo la cuestión, estamos convencidos de que la teoría expuesta en los casos de *Sosa* v. *Río Grande Agrícola Co., Ltd.,* 17 D.P.R. 1149 y *López* v. *Central Eureka,* 27 D. P.R. 291, debe prevalecer. Ella constituye una regla de propiedad establecida desde hace años, seguida invariablemente en decisiones posteriores y no alterada por la Legislatura no obstante la claridad con que fué expuesta.

Dejando a un lado las circunstancias peculiares que existen en el caso de las Filipinas, (la finca no estaba inscrita y existía una estipulación en el contrato de arrendamiento de respetarlo en caso de venta, conocida por la compradora), diremos, con el debido respeto, que a nuestro juicio se dió en la decisión un alcance indebido a la palabra tercero aplicada al comprador en el caso del artículo 1571 del Código filipino igual al 1474 del puertorriqueño.

Ello hubiera sido procedente si sólo contuviera el código civil el artículo 1452 igual al 1549 del de Filipinas que dice:

"Con relación a terceros, no surtirán efecto los arrendamientos de bienes raíces que no se hallen debidamente inscritos en el registro de la propiedad."

Pero el legislador hizo más. Reconoció al comprador en general, irrespectivamente de su conocimiento o no, el de-

recho a terminar el arrendamiento de la finca comprada, estableciendo las excepciones que conocemos. La referencia a la Ley Hipotecaria sólo puede tener efecto cuando la Ley Hipotecaria se cumple, esto es, cuando el arrendamiento se inscribe.

Son muy interesantes y arrojan mucha luz sobre el alcance del precepto legal de que se trata, los comentarios de Scaévola sobre el artículo 1471 del Código Civil Español, igual al 1452 del nuestro, pero son demasiado extensos para ser transcritos.

El precepto tiene sus raíces en el derecho romano. Las Partidas lo reconocieron. Dice Scaévola:

"En la ley 19, título VIII, Partida V, resuena el eco de la ley transcrita del Codex.

" 'Auiendo arrendado algund ome o alogado a otro casa o heredamiento, a tiempo cierto, si el señor della, la vendiere ante que el plazo sea cumplido, *aquel que la del comprare bien puede echar della al que la tiene alogada,* mas el vendedor que gela logo, tenudo es de tornarle tanta parte del loguero quanto tiempo fincaua que se deuia della aprouechar. . . .' " 24 Scaévola Código Civil, 658.

Dos excepciones, sin embargo, admitía la ley Alfonsina: primera, si el comprador se obligó al comprar la cosa a respetar el arrendamiento, y segunda, cuando el vendedor la hubiera arrendado por toda la vida del locatario, o para siempre, "también del como de sus herederos", es decir, en los casos de arrendamientos perpetuos.

Los autores Gómez y Covarrubias, pretendieron extender el beneficio de la excepción a los arrendamientos hechos por diez o más años, pero Gregorio López opinaba lo contrario limitando el alcance de la ley a los arrendamientos de por vida y a los transmisibles por causa de muerte.

Véase 24 Scaévola, Codigo Civil, 650 a 732.

Al explicar las razones que se tuvieron para redactar el número quinto del artículo dos de la Ley Hipotecaria en la forma en que aparece transcrito en la opinión de la Corte Suprema de Filipinas, en la *Exposición de Motivos,* se dijo lo siguiente:

"Ni los arrendamientos por largo espacio de años, ni aquellos, en que se hayan hecho considerables anticipaciones, son generadores de un derecho real, quedando siempre limitados a una obligación personal. De aquí ha dimanado la doctrina jurídica de que sólo el que adquiere el dominio en virtud de un título universal, está obligado a respetar el arrendamiento hecho por su antecesor, pero no el que lo hace por títulos singulares. Las circunstancias particulares que concurren en estos arrendamientos, los gastos a que suelen comprometer a los arrendatarios, y la protección debida a la buena fe, clave del crédito, exigen que acerca de este punto se modifique el derecho antiguo. Ya se había encargado la práctica de ir allanando el camino para la reforma, convirtiendo contra los cánones recibidos, en una especie de derecho real, los arrendamientos de que se tomaba razón en los registros de hipotecas. Y es que cuando el derecho escrito o la doctrina legal no alcanza a satisfacer una necesidad, se encarga la costumbre de llenarla; y cuando esto acontece. toca al legislador convertir en Ley y dar forma y regularidad a lo que ya es una necesidad reconocida. De este modo, sin perjuicio del dueño, que al enajenar o traspasar una finca no pretende burlarse de las obligaciones que contrajo con los arrendatarios, sin daño del comprador de buena fe que entra en el contrato con el conocimiento de una obligación de que es sucesor, se salvan los justos derechos de los arrendatarios en los casos que en el proyecto se prefijan.

"La Comisión no debe ocultarlo: en ellos ha establecido implícitamente un verdadero derecho real."

Como puede verse los autores de la Ley Hipotecaria reconocen que ni los arrendamientos por largo espacio de años, ni aquellos en que se hayan hecho considerables anticipaciones, son generadores de un derecho real, quedando siempre limitados a una obligación personal, de donde emana la doctrina de que sólo el que adquiere a título universal está obligado a respetar el arrendamiento hecho por su antecesor, pero no el que adquiere por títulos singulares, y reconociendo que ello resultaba injusto en muchos casos y basándose en el precedente que convertía, contra los cánones recibidos, en una especie de derecho real, los arrendamientos de que se tomaba razón en los registros de hipotecas, abrieron las puertas del nuevo sistema y permitiendo la inscripción en los

registros de los arrendamientos que especifican, otorgaron a éstos al ser inscritos, la condición de un derecho real.

No fueron sólo los arrendamientos en que el término excede de seis años los que se permitieron inscribir, si que también aquellos en que se anticipan las rentas por tres o más años o en que se pacta la inscripción. Si se es lógico en la aplicación del razonamiento, habría que reconocer que un arrendamiento por seis meses en que se pactara la inscripción, aunque no se llevara al registro, constituiría un derecho real. No creemos que ese fuera en modo alguno el pensamiento de los autores de la Ley Hipotecaria.

Hemos consultado la jurisprudencia de la Corte Suprema de España y hemos encontrado varias sentencias en las que si bien no se discute la cuestión envuelta, se aplica sin distingos el artículo 1571 del Código Civil y hay una, la de 22 de noviembre de 1917, 138 J. C. 490, en la que se trata de un arrendamiento que comenzaba el 1⁰ de enero de 1912 y terminaba el 31 de diciembre de 1917, o sea por seis años, y en ella se resolvió:

"Que acreditado por la parte demandante el dominio de la finca, por escritura de venta que en nombre del ejecutado, a instancia del Banco Hipotecario, le otorgó el Juzgado de primera instancia competente debidamente inscrita en el Registro de la Propiedad, y la posesión real y civil que le fué conferida judicialmente, ostenta, sin género de duda la personalidad requerida por el art. 1564 de la Ley de Enjuiciamiento Civil para ejercitar la acción de desahucio contra quien ocupe la finca por virtud de arrendamiento concertado con el dueño anterior, siempre que se le hubiese requerido, a los efectos del art. 1565 de dicha ley, para terminar el contrato, no por haber llegado el tiempo marcado en el mismo, sino por la exclusiva voluntad del comprador en uso del derecho que le confiere el art. 1571 del Código civil."

Hemos consultado también los comentaristas españoles. A Manresa lo citamos extensamente en el caso de *López v. Central Eureka, supra,* y ahora que volvemos a referirnos a él parece conveniente decir que si bien califica de tercero al comprador con respecto al arrendamiento pactado por el

dueño anterior, lo que dió lugar seguramente a la deducción que contiene la decisión filipina (43 Jurisprudencia Filipina, 632, 634), lo hizo teniendo en mente el precepto literal del artículo 35 de la Ley Hipotecaria que califica de tercero al que no haya intervenido en el acto o contrato inscrito, y tuvo buen cuidado luego de explicar su criterio así: ''Consecuencia de estas disposiciones es que, cuando se trata de un arrendamiento *inscrito en el registro,* se trata de un derecho real *que, por virtud de su inscripción,* surte efecto contra terceros.'' Las itálicas nuestras.

De Scaévola algo hemos dicho y a través de él de Gómez, Covarrubias y Gregorio López.

Nada terminante se encuentra en Galindo o en Escriche que vaya en contra de nuestra interpretación del artículo 1474, y Morell dice:

''Al tratar de los derechos reales incluimos como uno de ellos el de arrendamiento, por estimar que ésa es su verdadera naturaleza.

''En el terreno de los principios puede considerarse, en efecto, el arrendamiento como un derecho real; en el terreno legal, no, pues no lo considera como tal el Código civil, ni bastan a darle ese carácter en absoluto las disposiciones de la ley Hipotecaria.

''Resulta, sin embargo, de los preceptos de esta ley que la inscripción modifica el carácter del arrendamiento, convirtiéndole de hecho, como decían los autores de la ley de 1861, en un derecho real, pero sólo en los casos en que esa inscripción existe.'' 1, Morell. Legislación Hipotecaria, 384.

Quizá deba consignarse también que no obstante haber estado defendidos los apelados por abogados de verdadero valer, no sostienen el criterio de que por el solo hecho de tratarse de un contrato de arrendamiento por más de seis años, el comprador estaba obligado a respetarlo. Su alegato es como sigue:

''Si el arrendamiento de los consortes Andrés Negroni y Dolores Rodríguez a los hermanos Delgado había sido inscrito en la fecha en que Joaquín Díaz compró a Andrés Negroni el condominio de una mitad, el comprador venía obligado a estar y pasar por dicho

arrendamiento en cuanto al condominio comprado, sin poder pretender que se extinguiera tal arrendamiento, en cuanto al condominio comprado, en virtud de 'la compra. El arrendamiento inscrito constituía un verdadero derecho real unido a la cosa como el alma al cuerpo. De igual modo al comprar los hermanos Delgado el condominio de la mitad restante (estando inscrito el arrendamiento sobre las fincas) venía obligado a respetarlo en lo que atañe al condominio comprado, en las mismas circunstancias y términos que Joaquín Díaz.

"De igual modo, si no habiéndose inscrito el arrendamiento, Díaz pactó respetarlo al comprar, estaría obligado por el contrato e igualmente los Hermanos Delgado, si medió dicho pacto.

"De suerte, pues, que el único caso en que el comprador de una finca arrendada puede tratar el arrendamiento otorgado por su vendedor como inexistente, o mejor dicho, como terminado, es cuando el arrendamiento no se ha inscrito en el Registro y no media pacto entre arrendatario y comprador, de que éste respetaría el arrendamiento."

Parece conveniente agregar que nada de lo expuesto en esta opinión milita en contra de la jurisprudencia establecida por la Corte Suprema de España y por esta misma Corte Suprema de Puerto Rico en relación con el concepto de tercero. La conclusión a que llegamos está limitada a fijar el alcance de los derechos que al comprador de una finca arrendada reconoce el artículo 1474 del Código Civil.

La sentencia debe, pues, revocarse, como al principio dijimos. Se permitirá al demandado enmendar su alegación. Lo expuesto en su proyecto de enmiendas sobre la inscripción del arrendamiento es aún confuso. Si ello quiere decir que el arrendamiento se inscribió sobre la totalidad de las fincas A, B y C y luego se canceló sobre la mitad a virtud de la acción de retracto, nos inclinamos a creer que la cancelación indicada no beneficiaría al demandante. Tampoco es aún suficientemente clara la enmienda propuesta a la segunda causa de acción. Debe alegarse la cláusula del contrato con respecto al pago con entera precisión y de igual modo en qué consiste la falta de pago. porque si la verdadera obligación del arrendatario consistía en depositar el canon en un

banco de Yauco durante la semana y así lo hizo, no habría causa de acción.

Por virtud de todo lo expuesto,*se revoca la sentencia apelada y el caso se devuelve* a la Corte de Distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión.

El Juez Asociado Sr. Hutchison disintió.