Joaquín Díaz y Díaz, demandante y apelante, *v.* Francisco Delgado Negroni, casado con Rita Oppenheimer, y Antonio Delgado Negroni, casado con Ruth E. Capple, demandados y apelados.

No. 5039.—*Sometido:* Enero 14, 1931.  *Resuelto:* Febrero 13, 1931.

*López de Tord & Zayas Pizarro*, abogados del apelante; *Tous Soto & Zapater*, abogado de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Por segunda vez pende este asunto ante esta Corte Suprema. La primera fué resuelto dejándose reafirmada, con el disentimiento de uno de los jueces, la siguiente jurisprudencia: "De acuerdo con el artículo 1571 del Código Civil, el comprador de una finca tiene derecho a ejercitar la acción de desahucio contra el poseedor material de la misma aunque éste la tenga arrendada por más de seis años y el comprador lo sepa, cuando el arrendamiento no está inscrito en el registro de la propiedad, y salvo pacto en contrario." *Díaz* v. *Delgado*, 38 D.P.R. 629. La opinión emitida al efecto, termina así:

"La sentencia debe, pues, revocarse, como al principio dijimos. Se permitirá al demandante enmendar su alegación. Lo expuesto en su proyecto de enmiendas sobre la inscripción del arrendamiento es aún confuso. Si ello quiere decir que el arrendamiento se inscribió sobre la totalidad de las fincas A, B y C y luego se canceló sobre la mitad a virtud de la acción de retracto, nos inclinamos a creer que la cancelación indicada no beneficiaría al demandante. Tampoco es aun suficientemente clara la enmienda propuesta a la segunda causa de acción. Debe alegarse la cláusula del contrato con respecto al pago con entera precisión y de igual modo en qué consiste la falta de pago, porque si la verdadera obligación del arrendatario consistía en depositar el canon en un banco de Yauco durante la semana y así lo hizo, no habría causa de acción.

"Por virtud de todo lo expuesto, se revoca la sentencia apelada y el caso se devuelve a la Corte de Distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión."

Devuelto el caso a la corte de su origen, el demandante enmendó su demanda. Los demandados se allanaron a que se decretara el desahucio en cuanto a la finca letra D y re-

sistieron la acción en cuanto a las otras fincas, A, B y C. En el curso de la opinión emitida en *Díaz* v. *Delgado*, 38 D.P.R. 629, 633, se había dicho:

"Con respecto a dicha finca D nos encontramos frente al caso de un contrato de arrendamiento no inscrito en el registro que el comprador no se obligó a respetar al adquirir la finca. Siendo ello así, su derecho al desahucio parece tan claro a virtud del precepto legal aplicable vigente en Puerto Rico, que apenas puede discutirse."

La vista del pleito en la corte de distrito fué larga. El récord elevado consta de 846 páginas. Con los alegatos presentados en esta corte, se acerca a mil.

El asunto es confuso. Esta opinión se entenderá mejor si se lee en su integridad la que dejamos citada y que ocupa las páginas 629 a 645 del volumen 38 de las Decisiones de este tribunal.

Siendo dueños los esposos Negroni-Rodríguez de tres fincas rústicas situadas en la jurisdicción de Yauco, designadas en la demanda con las letras A, B y C, las dieron en arrendamiento a su hijo Francisco Negroni por término de diez años. El matrimonio Negroni-Rodríguez quedó disuelto por sentencia de divorcio y dueño cada cónyuge de una mitad de las fincas. Negroni vendió su mitad al demandante Díaz. Poco después, la señora Rodríguez, vendió la suya a los hermanos Francisco y Antonio Delgado, a quienes acababa de subarrendar las fincas el arrendatario Francisco Negroni. Díaz ejercitó la acción de retracto contra los hermanos Delgado. Estos terminaron por allanarse, dictándose la consiguiente sentencia, y dueño Díaz de la totalidad de las fincas, inició este pleito de desahucio fundado en dos causas de acción. En la forma que hemos indicado, fué el pleito finalmente a juicio y la corte lo decidió en contra del demandante, quien, no conforme, interpuso el presente recurso de apelación.

La primera causa de acción se basa en que al adquirir los subarrendatarios, hermanos Delgado, aquí demanda-

dos, el condominio de la señora Rodríguez, quedó extinguido el arrendamiento sobre dicho condominio, por confusión de derechos, sin que reviviera a virtud de la sentencia de retracto. Siendo ello así a juicio del demandante y apelante, los demandados quedaron ocupando las fincas en precario en cuanto al indicado condominio y su derecho a desahuciarlos resulta claro.

No estamos conformes. No hay duda alguna de que el contrato de arrendamiento por diez años sobre las fincas A, B y C, se inscribió en el registro. El comprador estaba, en tal virtud, en la obligación de respetarlo. Es cierto que los subarrendatarios hicieron constar que, convertidos en dueños de la mitad de las fincas que tenían subarrendadas, quedaba extinguido el arrendamiento en cuanto a esa mitad, pero como se dejó la compra sin efecto porque el otro condómino ejercitó el derecho que la ley le concedía de adquirir para sí el condominio en cuestión, sin efecto quedó también la confusión de derechos mencionada. Los actos que se realizan por los hombres no tienen sólo las consecuencias que a cada parte interesen, sino todas las consecuencias que natural y legalmente se derivan de ellos. Si el arrendamiento se declaró extinguido por los propios subarrendatarios, fué porque ellos se consideraron dueños. Si dejaron de serlo porque la otra persona que tenía un derecho preferente al de ellos a adquirir el condominio, lo ejercitó y le fué reconocido, la confusión desapareció al desaparecer su base, y el arrendamiento continuó como si nada hubiera ocurrido.

■■■ Examinemos la otra causa de acción, la de falta de pago, que es la que en verdad, presenta las cuestiones que más nos han hecho vacilar en la resolución de este litigio.

Es necesario dividir su estudio en tres partes, a saber:

1. La alegada falta de pago o depósito de los cánones correspondientes al 30 de marzo y al 6 de abril de 1925;

2. El depósito de un gran número de cánones en los días

martes y miércoles, en vez del lunes de cada semana como fija el contrato, y

3. La alegada falta de pago, de depósito, o de consignación de los cánones correspondientes a una mitad de las fincas desde el 14 de abril, 1925, hasta el 1 de marzo, 1926, período durante el cual se estuvo tramitando el pleito de retracto.

Veamos la primera cuestión o sea la relativa a los cánones de 30 de marzo y 6 de abril de 1925.

El demandante Díaz compró su condominio a Negroni el 26 de marzo de 1925. Tenía derecho a percibir una parte del canon semanal del arrendamiento que vencía el 30 del propio mes y la totalidad del que venció el 6 de abril siguiente. Sostiene que jamás percibió dichos cánones. Los demandados en contrario alegan que no teniendo conocimiento Francisco Negroni del contrato celebrado entre Díaz y su arrendador, pagó a éste el canon que venció el 26 de marzo y depositó a su favor el que venció el 6 de abril. ¿Lo probaron?

Antes de exponer nuestro criterio, conviene conocer el de la corte sentenciadora sobre el particular. Es así:

"De la evidencia practicada y de su apreciación, la Corte no está convencida que los cánones correspondientes a los plazos vencidos en 30 de marzo y 6 de abril de 1925, no fueran pagados por Francisco Negroni.

"Pero en el supuesto de que Francisco Negroni no verificase el pago de esos cánones, tal falta de pago, ¿puede originar una causa de acción rescisoria del arrendamiento por desahucio? Entendemos que no, por la razón de que los Delgado son terceros y sólo pueden perjudicarles aquellos motivos rescisorios que consten en el Registro de la Propiedad, y no apareciendo de éste, no procede dicha causa de acción rescisoria de desahucio."

En manera alguna podemos estar conformes en que los demandados en este caso, siendo como son los subarrendatarios de Francisco Negroni, puedan tener el carácter de terceros, con respecto al arrendamiento celebrado entre Negroni y los dueños de las fincas. Si se aceptara esa teoría, cual-

quier arrendatario que hubiera dejado de pagar los cánones del arrendamiento, podría resistir la acción de desahucio basada en tal motivo, con subarrendar la finca a otra persona. Esta alegaría que estaba en posesión de la finca y que no podía desalojársele de ella por falta de pago del canon de arrendamiento, porque él era un tercero a quien no podían perjudicar los actos del que le subarrendó.

Los mismos demandados, no obstante sostener que son terceros, se cuidaron de presentar prueba del pago del arrendamiento por parte de Francisco Negroni. ¿Cuál fué esa prueba y qué alcance tiene?

Comprendemos, en efecto, la dificultad de los demandados para probar el pago de esos cánones, que hace resaltar su abogado en su alegato, dado lo tarde que se inició la demanda de desahucio, pero todo demuestra que éste no era un caso corriente desde sus comienzos y por lo tanto que los demandados debieron estar alerta y prepararse para resistir cualquier ataque a su derecho con la prueba necesaria, especialmente en lo que respectaba al pago de los cánones de arrendamiento, ya que la ley de desahucio prescribe en su sección 9:

"Cuando la demanda se funda en falta de pago del canon o precio convenido en un contrato, no se admitirá al demandado otra prueba que la del recibo o cualquier otro documento en que conste haberse el pago verificado."

Uno de los demandados declaró que le constaba el pago del canon correspondiente al 30 de marzo de 1925 hecho por Francisco Negroni a sus arrendadores, porque Francisco Negroni no solamente le mostró sí que le hizo entrega del recibo, recibo que no pudo encontrar a la fecha del juicio. Esa prueba fué admitida con la objeción de la parte demandante, y aunque la admisión estuviera justificada, sería de un valor muy dudoso, y sólo podría tener influencia favorable al caso de los demandados no teniendo Francisco Negroni conocimiento de la venta hecha por su padre Andrés al demandante Díaz, lo que es aún más dudoso.

El pago o la consignación del canon correspondiente al 6 de abril de 1925, se trata de demostrar por los demandados por la consignación hecha por Francisco Negroni a favor de Andrés Negroni en el banco el 7 de abril, 1925. Se demostró en verdad que tal consignación se hizo, pero se demostró también por la propia declaración de Andrés Negroni que cuando le llevaron el certificado o cheque él no recuerda bien que era —le dijo al mismo que lo entregó: "Lleve usted eso a don Joaquín Días o a los Delgado, porque yo ya no soy dueño de esa propiedad" y el canon volvió al banco y nunca ha sido recibido por Díaz, no habiéndose probado siquiera que se transfiriera el depósito a su nombre.

Y con respecto a este depósito sí que no puede invocarse en modo alguno lo que prescribe el artículo 1430 del Código Civil, a saber: "El deudor que antes de tener conocimiento de la cesión, satisfaga al acreedor, quedará libre de la obligación", porque a la fecha del 7 de abril de 1925 ya el conocimiento de la cesión de Andrés Negroni al demandante Díaz, no sólo por parte de Francisco Negroni, sino por parte de los demandados, era evidente, no a virtud de simples inferencias como a la fecha del 30 de marzo anterior, sino por una admisión solemne hecha constar en la escritura de subarrendamiento, otorgada por Francisco Negroni y los demandados el propio 7 de abril, así:

" 'Quinto: Que posteriormente el don Andrés Negroni Lluberas trasmitió en venta a favor de don Joaquín Díaz y Díaz, su expresada participación de una mitad en cada una de las antes expresadas fincas, cuyo traspaso efectuó mediante la escritura pasada ante el Notario don Rafael Arjona Siaca con fecha 26 de Marzo corriente.' "

Pero se insiste por los apelados en que aunque la prueba aportada no fuera suficiente para demostrar que se habían satisfecho a Díaz los cánones correspondientes a los días 30 de marzo y 6 de abril de 1925, habiendo aceptado el depósito de los que siguieron, existe la presunción de que dichos cánones anteriores fueron pagados (Art. 102 de la Ley de Evi-

dencia) y el contrato de arrendamiento quedó reconocido y subsistente. Esto nos lleva al estudio del segundo motivo en que se basa la acción de desahucio por falta de pago.

No hay duda alguna que los demandados depositaron semanalmente en el banco los cánones del arrendamiento correspondiente al condominio que el demandante compró a Andrés Negroni desde el 13 de abril de 1925 hasta el 1 de marzo de 1926 en que a virtud de la sentencia de retracto ·el demandante Díaz quedó convertido en dueño de la totalidad. de la finca, depositando a partir de esa fecha todo el canon a favor del dicho Díaz. Tampoco la hay sobre el hecho de que algunos depósitos no se hicieron en el día de la semana especificado en el contrato sino en otro día de la propia semana.

¿Cumplieron los demandados limitándose a depositar los cánones en el banco?

Para contestar la pregunta en forma afirmativa basta transcribir la cláusula tercera de la escritura de arrendamiento otorgada el 21 de octubre de 1924, en Guayanilla, ante el notario Padró, por los entonces esposos Negroni-Rodríguez y su hijo Francisco Negroni Rodríguez, que dice:

"TERCERA: Constituye el canon de este arrendamiento, la suma de VEINTE Y CINCO DÓLARES SEMANALES, que el don Francisco pagará al don Andrés, cada día lunes, y los depositará en cualquier institución bancaria de esa población, a la disposición del don Andrés."

¿Qué efecto tiene la falta de depósito en el día especificado?

A nuestro juicio el mismo que la falta del pago en el día especialmente señalado para ello. Pero aun admitiendo que esto sea así, sostienen los demandados que habiendo sido aceptado el depósito por el demandante no puede alegarse el hecho como causa determinante del desahucio.

Para basar su afirmación de que el demandante aceptó el depósito, alegan los demandados que el banco era el agente

del demandante y en todo caso que al no rechazar el demandante los depósitos, los aceptó implícitamente.

El banco no actuaba como agente del demandante, sino de los demandados, como lo revela una carta presentada como prueba, dirigida por los demandados al banco que dice:

"Desde el día lunes 13 de los corrientes y en adelante cada día lunes de cada semana, se servirán tener la bondad de poner a la disposición de don Joaquín Díaz y Díaz de este pueblo la suma de (doce dollars 50/100) $12.50 cantidad que cargarán a n/ cuenta."

Siendo ello así, si el banco dejó de depositar en la fecha exacta, su actuación era la actuación de los propios demandados y éstos eran responsables de las consecuencias que pudieran derivarse de ella.

En cuanto a lo que pudiera concluirse de la actuación del demandante, si bien no revela que rechazara expresamente el depósito, tampoco puede deducirse de ella que lo aceptara: De hecho jamás dispuso Díaz de las sumas depositadas a su favor y constantemente estuvo litigando, primero en el pleito de retracto, y en cuanto ese caso se decidió en su favor, en éste de desahucio.

Quizá si estas dilaciones en los depósitos fueran la única causa alegada y demostrada por el demandante para probar la falta de cumplimiento del contrato de arrendamiento por parte de los demandados, su caso sería débil, en verdad, pero conocemos lo ocurrido con los cánones correspondientes al 30 de marzo y al 6 de abril de 1925, y vamos a examinar ahora el tercero y último motivo en que la falta de pago se basa y, todo combinado, fortalece el caso del demandante de tal modo, que nos vemos obligados a concluir que el desahucio procede.

Dentro del breve término que fija el estatuto, el 14 de abril de 1925, dueño el demandante Díaz de la mitad de las fincas por compra a Andrés Negroni, al enterarse de la compra hecha por los hermanos Delgado de la otra mitad, ejercitó contra ellos la acción de retracto de que tantas veces se

ha hablado en el curso de esta opinión. Opusiéronse los demandados contestando la demanda el 26 de junio de 1925. Al fin se allanaron por escrito de febrero 18, 1926, dictando la corte sentencia de conformidad, dos días después.

Durante todo el tiempo en que estuvo pendiente el pleito de retracto, los demandados sólo consignaron la mitad del canon a favor de Díaz. Resuelto el pleito, comenzaron a consignar el canon completo. Nada hicieron con respecto a la mitad dejada de consignar, mitad que nunca ha percibido Díaz, ni que en modo alguno había sido consignada a su favor cuando inició este pleito de desahucio, ni después.

A nuestro juicio si bien era congruente con su posición dentro del pleito de retracto la actitud de los demandados al limitarse a depositar en el banco sólo la mitad del canon de arrendamiento, no hay duda alguna que debieron por lo menos consignar la otra mitad cuando el pleito de retracto quedó resuelto a favor del demandante, para que pudieran alegar el pleno cumplimiento por su parte del contrato de arrendamiento, ya que Díaz, a virtud de la sentencia de retracto, resultó ser el verdadero dueño desde la fecha de la venta, por el efecto retroactivo del cumplimiento de la condición resolutoria de retro.

En contrario sostienen los apelados en su magnífico alegato que ellos no estaban obligados a pagar los indicados cánones al demandante Díaz porque tratándose como se trataba de frutos civiles, según el artículo 362 del Código Civil, y siendo ellos poseedores de buena fe hasta que la sentencia de retracto fué dictada, le pertenecen de hecho y de derecho dichos frutos que se consideran producidos de día en día. Artículo 453 del propio Código Civil.

No estamos conformes porque una de las premisas de que se parte es la de la buena fe de los demandados hasta que se dictó la sentencia, y de acuerdo con la ley y la jurisprudencia esa buena fe una vez dictada la sentencia sólo puede contarse a partir de la fecha en que los demandados fueron emplazados de la demanda de retracto.

El artículo 438 del Código Civil vigente, dice:

"Artículo 438: Se presume que la posesión se sigue disfrutando en el mismo concepto en que se adquirió, mientras no se pruebe lo contrario."

Y basándose Manresa en el 435 del Código Civil antiguo, igual al 438 transcrito, se expresa así:

*"Poseedor de buena fe convertido en de mala fe.*—Lo es, en virtud del art. 435, el que llega a conocer lo indebido de su posesión desde el momento en que se pruebe que lo conoció, como ya vimos al comentar dicho artículo. Lo es también todo poseedor vencido, desde la primera citación judicial.

"Hay que aplicar las reglas expuestas para el poseedor de buena fe hasta el momento en que ésta se considera perdida, y desde ese momento en adelante las referentes al poseedor de mala fe. No hay más que separar las épocas de posesión." 4 Manresa, Comentarios al Código Civil Español, Segunda Edición, 274.

Habiendo llegado a las anteriores conclusiones y debiendo decretarse el desahucio, no es necesario considerar la otra cuestión envuelta en el recurso sobre las dificultades surgidas con motivo de la toma de posesión y aprovechamiento de la finca letra D, a cuyo desalojo se avinieron los propios demandados. Al tomar posesión el demandante de las fincas A, B y C, tendrá la salida que interesa por dentro de sus propias tierras.

*Debe revocarse la sentencia recurrida y dictarse otra declarando la demanda con lugar también en cuanto a las fincas letras A, B y C, sin especial condenación de costas.*