SALVADOR CARRASQUILLO, demandante y apelante, *v.* GABRIEL RIPOLL, demandado, y PEDRO MONTALVO, interventor y apelado.

Núm. 8063.—*Sometido:* Marzo 7, 1940. *Resuelto:* Marzo 13, 1940.

*Gaspar Gerena Bras,* abogado del apelante; *Diego E. Ramos,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

En ejecución de una sentencia de la Corte Municipal de Utuado, se adjudicó a Salvador Carrasquillo una finca rústica propiedad de Gabriel Ripoll. Instó Carrasquillo procedimiento de desahucio contra Ripoll en la Corte de Distrito de Arecibo y no compareciendo el demandado se dictó sentencia en su contra, procediéndose el 10 de agosto de 1938 al lanzamiento, no sólo del demandado, si que también de Pedro Montalvo, que residía en otra casa en la misma finca.

El 22 de dicho mes radicó Montalvo una moción interesando. permiso para intervenir en el pleito de desahucio, acompañando dicha moción de un proyecto de demanda jurada. Celebrada una audiencia sobre la procedencia de la intervención, la corte la permitió el 21 del mes siguiente, a pesar de ser ya firme y haberse ejecutado la sentencia en el pleito de desahucio y no obstante la oposición del demandante Carrasquillo.

En su demanda enmendada el interventor, luego de referirse al procedimiento de desahucio seguido contra Ripoll y al lanzamiento de que fué objeto, continuó alegando que por varios años antes de instarse el desahucio, el interventor venía en posesión de una porción de 8 cuerdas de la finca principal a virtud de contrato de aparcería celebrado con Ramón Larracuente, describiendo inmediatamente después las plantaciones que tenía; que no tuvo conocimiento del pleito a virtud del cual se adjudicó a Carrasquillo la finca de Ripoll, ni tampoco supo de este pleito de desahucio hasta que fué lanzado de la finca; que el lanzamiento en cuanto al

interventor concierne es nulo e ineficaz, toda vez "que no está ni jamás ha estado unido el demandado Ripoll por vínculo alguno, es decir, como familiar, agente, empleado, inquilino, arrimado, colono o aparcero, ni en ninguna otra forma . . ."

La contestación niega las alegaciones esenciales de la demanda enmendada de intervención y concluye con una titulada "Materia Nueva", en la que el demandante Carrasquillo expone cómo adquirió de Ripoll la finca en controversia.

Oída la prueba en el incidente de intervención, la corte inferior dictó una resolución ratificando el lanzamiento de que fué objeto el interventor, pero condenó al demandante en el pleito de desahucio, Salvador Carrasquillo, a pagarle la cantidad de $75, en que estimó las plantaciones existentes en la porción de ocho cuerdas.

Fundamentando su resolución, dice el juez sentenciador:

"En la vista del caso el interventor habló de un contrato de aparcería pero en forma tan vaga que llegamos a la conclusión que las relaciones que le unían con Larracuente, anterior poseedor de esa finca, en cuanto a la porción que ocupaba, era más bien la de un agregado a quien se le concede un pedazo de terreno para que lo cultive y viva en la finca.

"Se desprende de la situación presentada que el demandante en este caso desahució al interventor por entender que era un agregado en la finca que dependía de la persona que fué demandada. Se presentó como prueba un *affidavit* del que aparece que allá para abril de 1937 Montalvo celebró un contrato de arrendamiento con Ripoll sobre la referida porción de ocho cuerdas en la finca objeto del desahucio, y hubo prueba de que ese contrato después fué terminado. En el contrato se habla de que Montalvo tendría derecho al pago de ciertas mejoras. No obstante, el interventor no ha traído a la Corte una teoría verdad de su caso, pues aparece declarando sobre un contrato de aparcería y negó que hubiese hecho contrato de arrendamiento, a pesar de que está autorizado ante notario público.

"Entendemos que el contrato existió, pero como el interventor declara bajo juramento que él se entendía con la sucesión Larracuente hasta hace poco, en que fué lanzado, llegamos a la conclusión de que en una y otra forma el convenio entre Ripoll y Montalvo quedó terminado.

"Aun aceptando que el interventor Pedro Montalvo estuvo bien lanzado, sería injusto que no se le abonara algo por el importe de sus plantaciones. Es verdad que él pudo utilizar el derecho que le concede la ley de desahucio para la valoración de esos plantíos en el momento del lanzamiento, pero teniendo en cuenta que no fué notificado en forma alguna oficial de la demanda de desahucio ni del lanzamiento y que pudo haber desconocido su derecho por falta de oportunidad para consultar con expertos, la Corte entiende que habiéndose declarado sobre el valor de esos plantíos en la vista de la intervención, aunque en forma sumamente exagerada, podemos equitativamente establecer una compensación para que se haga justicia completa en este caso.

"Por las razones expuestas, y teniendo en cuenta la prueba practicada, la Corte, si bien deja confirmado el lanzamiento de Pedro Montalvo, dispone que Salvador Carrasquillo, el demandante, debió indemnizar y debe satisfacer al interventor Pedro Montalvo la suma de $75.00 como precio de las plantaciones que tenía en la porción de terreno que utilizaba en la finca objeto del desahucio, cuya cantidad debe ser consignada en esta Secretaría dentro de los diez días de dictarse esta resolución."

En el alegato que en apoyo de este recurso presentó Carrasquillo, imputa a la corte sentenciadora haber incurrido en error al admitir la demanda de intervención; al desestimar las excepciones previas sobre defectos de partes interesadas y de insuficiencia de hechos constitutivos de causa de acción; y finalmente, al apreciar la prueba y condenarlo a pagar al interventor la cantidad de $75 por sus plantaciones.

■■ La ley reguladora del derecho de intervención está consignada en el artículo 72 del Código de Enjuiciamiento Civil, que en lo pertinente dice:

"Art. 72.—Cualquier persona, *antes de la celebración del juicio*, podrá intervenir en una acción o procedimiento, si tuviere interés en el asunto en litigio, en el éxito de cualquiera de las partes, o algún derecho en contra de ambas . . ."

La letra del transcrito precepto sostiene la tesis del apelante al efecto de que el permiso que para intervenir se solicitó en este caso lo fué tardíamente, habida cuenta de que

al presentarse la moción de intervención no sólo se había celebrado el juicio y dictado sentencia en el pleito principal, si que tal sentencia había sido ya ejecutada. Sin embargo, la limitación en cuanto al tiempo de radicar la petición, persigue el propósito de impedir dilación en el pleito principal y evitar afectar la sentencia dictada. *Benítez* v. *Tabacaleros, etc.*, y *Fed. Int. Credit Bank,* 50 D.P.R. 791, y jurisprudencia citada.

En el caso de autos la sentencia que pueda dictarse en el incidente de intervención en manera alguna afecta la ya dictada y ejecutada contra Ripoll. Por consiguiente, actuó correctamente ·la corte inferior al conceder permiso para intervenir, no obstante haberse dictado y ejecutado la sentencia en el pleito principal.

██ Una mera lectura de la demanda de intervención pone de manifiesto su suficiencia, pues de sus alegaciones surge un derecho del interventor adverso a las pretensiones del demandante en el pleito principal. No era necesario que el interventor hiciera parte a la persona de quien alegó derivar su derecho a permanecer en la finca, en primer término, porque ningún remedio solicitó en su demanda contra tal persona, y en segundo lugar, porque dentro del pleito sumario de desahucio no puede dirimirse el título que en la finca en controversia pueda tener la aludida persona.

██ Convenimos, sin embargo, con el apelante en que la corte inferior erró en la apreciación de la prueba. De la declaración del interventor tomamos lo siguiente:

"P. ¿Conoce a Gabriel Ripoll?—Sí, señor.

"P. ¿Qué tiempo?—Más de veinte años.

"P. ¿Lo ha conocido como dueño de ese terreno?—Nunca.

"P. ¿O de algún terreno en ese barrio?—No, señor; en ese terreno poseía una finca el padre que la cogió el Banco Federal, de setenta cuerdas.

"P. ¿Ha estado relacionado con Ripoll en lo que concierne a ésa u otra finca?—No, señor.

"P. ¿Le ha arrendado terrenos a Ud. Ripoll?—No, señor.

"P. ¿O ha tenido contratos de aparcería con él?—No, señor.

"P. ¿O arrimado de él?—No; señor.

"P. ¿O empleado?—Nunca.

"P. ¿O pariente de él?—Nunca."   (T. de E., pág. 4.)

Más adelante, en el examen de repreguntas, aparece lo siguiente:

"P. ¿Usted ha declarado bajo juramento de que nunca ha tenido que ver con Ripoll?—No, señor.

"P. ¿No le arrendó cuerdas de terreno allí?—No, señor.

"P. ¿Que tenía una aparcería con Larracuente de ocho cuerdas?—Sí, señor.

"P. ¿Es o no cierto que para el doce de abril de mil novecientos treinta y siete usted compareció ante el Notario Francisco R. Flores, de Utuado, y allí, el doce de abril de mil novecientos treinta y siete, Gabriel Ripoll con Ud. le arrendó ocho cuerdas de las treinta y una cuerdas?—No, señor.   Conozco esa aparcería de la sucesión Larracuente.

"P. Si es cierto eso, le pregunto.—No es cierto.

"P. ¿Sabe leer?—No, señor.

"P. Mire esa marca que está ahí.—No conozco, no sé escribir.

"P. Esa marca, mírela.—La hace cualquiera.

"P. ¿No hizo esa marca?—La marca la hace cualquiera."   (T. de E., 7-8.)

El documento a que se alude en el contrainterrogatorio que precede, es un contrato celebrado entre Ripoll y el interventor el 12 de abril de 1937 en la ciudad de Utuado, ante el notario Francisco R. Flores, a virtud del cual el primero cedió en arrendamiento al segundo las ocho cuerdas en controversia por término de seis años y canon de $100 por la totalidad del término del arrendamiento, pagados en el acto de otorgarse el contrato.

Contrario a lo que afirma el juez inferior en su opinión, nada aparece de los autos que revele, remotamente siquiera, que el tal contrato había sido abandonado por las partes. Resulta además de la prueba que el Larracuente con quien dice el interventor haber celebrado el contrato de aparcería, fué un mero arrendador de la finca principal, quien la entregó al dueño anterior a Ripoll, allá por el año 1928, después de la tormenta de San Felipe.

Tenemos, pues, que dar por establecido que al tiempo de adquirir la finca Carrasquillo, y también cuando instó el pleito de desahucio contra Ripoll, el interventor poseía las ocho cuerdas en controversia a título del arrendamiento celebrado con Ripoll. Sentada esta premisa, la ley aplicable al caso es el artículo 1461 del Código Civil (ed. 1930), que literalmente dice así:

"Art. 1461. El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria.

"Si el comprador usare de este derecho, *el arrendatario podrá exigir que se le deje recoger los frutos de la cosecha que corresponda al año agrícola corriente y que el vendedor le indemnice los daños y perjuicios que se le causen."* (Bastardillas nuestras.)

Comentando Manresa el artículo 1571 del Código Civil español, idéntico al precedentemente transcrito, dice:

"De acuerdo con este criterio, el art. 1571 sienta el principio de que el comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta. El punto de partida de este criterio es la consideración de que siendo el arrendamiento un contrato que pasó entre el arrendador y el arrendatario, y mereciendo el comprador el carácter de tercero respecto del mismo, no puede prevalecer contra él un derecho de la categoría de los personales.

"El Código en este artículo ha instituído evidentemente una causa más de desahucio, causa que no arranca de hecho u omisión del arrendatario como las demás que hemos examinado, sino del acto de traslación de dominio realizado por el arrendador, que, al engendrar una nueva relación jurídica, ejerce positiva influencia sobre la antes existente por razón de los principios en que cada una se funda y del objeto común sobre que recaen, que es la finca arrendada.

"Antes de que la jurisprudencia de este artículo hubiese tenido tiempo de formarse, oímos discutir si el derecho que al comprador concede, podía o no ser ejercitado en forma de acción de desahucio y en el juicio de este nombre. Siempre estuvimos por la afirmativa, porque si lo que al comprador se concede es el derecho de hacer cesar un arrendamiento para que la finca quede completamente a su disposición, no otro es el fin que con el desahucio se persigue, y porque si este juicio procede en aquellos casos en que el motivo resulta de un hecho claro y evidente, notoriamente de esta naturaleza es el hecho

de la venta de que arranca el derecho del comprador. No puede, pues, caber duda de que se trata de una nueva causa de desahucio, y que en este juicio ha de tener efectividad el derecho del comprador cuando el arrendatario no quiera reconocerlo voluntariamente. Al Tribunal Supremo han llegado ya no pocos casos, y ni una vez siquiera se ha dejado de dar por supuesto, que tal procedimiento sea el adecuado.'' Manresa, ''Comentarios al Código Civil'', tomo 10, pág. 637.

Más adelante, estudiando el derecho que asiste al arrendatario contra el vendedor para que le indemnice los daños y perjuicios que se le hayan causado con motivo de la venta, continúa el citado comentarista:

''El segundo derecho que al arrendatario incumbe es el que le asiste contra el vendedor para que le indemnice los daños y perjuicios que se le causen. Al comprador no puede pedir daños y perjuicios, porque no contrató con él; no hay vínculo jurídico entre ambos: al vendedor, sí, porque el vendedor es el arrendador de la finca, y como tal arrendador se obligó a mantenerle en el goce pacífico del arrendamiento por todo el tiempo del contrato, obligación que viene a infringir con el acto de la venta de la cosa: justo es, por lo tanto, que le indemnice.

''Respecto de la cuantía de la indemnización, sabido es que el criterio de nuestros Tribunales no suele ser muy amplio y que siempre que se presente una demanda de tal naturaleza, debe tenerse en cuenta que los daños y perjuicios que se indemnizan son aquéllos cuya existencia resulte demostrada. Al arrendatario corresponderá, pues, la prueba.'' Ob. cit., pág. 643.

Véanse también los casos de *Sosa* v. *Río Grande Agrícola Co., Ltd.,* 17 D.P.R. 1149; *Angleró* v. *Fernández,* 31 D.P.R. 262; *Flores* v. *Delgado,* 34 D.P.R. 778; *Díaz* v. *Delgado,* 38 D.P.R. 629, y *Díaz* v. *Delgado,* 41 D.P.R. 835, donde este tribunal ha interpretado el aludido precepto legal.

Refiriéndose una vez más a los derechos del arrendatario bajo el artículo citado, dice Manresa:

''Son, pues, dos los derechos que le asisten: uno contra el comprador y otro contra el vendedor.

''El derecho contra el comprador le incumbe tan sólo en el caso de que se trate de una finca rústica, y *consiste en exigir que se le deje*

*recoger los frutos de la cosecha que corresponda al año agrícola corriente;* frase de transparente sentido que no necesita explicación, pero cuya aplicación en algunos casos puede ofrecer dudas.

"¿Qué solución será la adecuada, si se trata del arrendamiento de una dehesa de alcornoques cuyas sacas de corcho se verifican, por ejemplo, de ocho en ocho años? ¿Cuál si se trata de un pinar cuya próxima corta no debe hacerse hasta dentro de dos años? No creemos que esas cortas ni esas sacas deban considerarse como frutos de la cosecha del año agrícola corriente, ni que la intención de la ley haya sido comprender esos casos en su precepto, ni tales frutos se deben estimar como de *cosecha* en el sentido recto de la palabra. La indemnización del vendedor al arrendatario es la única solución que aparece razonable dentro del Código, sobre todo si se tiene en cuenta el carácter excepcional que muestra el derecho del arrendatario contra el comprador en tales casos." Ob. cit., págs. 641-642. (Bastardillas nuestras.)

Las plantaciones del interventor consistían de frutos menores tales como maíz, plátanos, yautías y calabazas, los cuales generalmente dan una sola cosecha, y si dan alguna otra, es de tan poca importancia que su valor no merece consideración. *De minimis non curat lex.* Por consiguiente, no erró la corte sentenciadora al tomar en cuenta el valor de la plantación y no el de la cosecha, puesto que en este caso uno y otro son más o menos el mismo.

Podrá argüirse que no habiendo sido demandado en desahucio el interventor, actuó la corte sin jurisdicción al lanzarlo de la finca sin que contra él se hubiese dictado una sentencia. Mas al intervenir Montalvo voluntariamente en el pleito de desahucio y no haber establecido apelación contra la resolución que ratificó el lanzamiento anteriormente verificado, consintió el pronunciamiento que de otro modo no hubiera podido sostenerse en apelación.

*Por lo expuesto, procede, a nuestro juicio, desestimar el recurso y confirmar la sentencia apelada.*